**BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| **IN RE: POWER MORCELLATOR PRODUCTS LIABILITY LITIGATION** | : : : : : : : : | MDL No. 2652 |

**BRIEF OF DEFENDANTS JOHNSON & JOHNSON; JOHNSON & JOHNSON
SERVICES; ETHICON, INC.; AND ETHICON ENDO-SURGERY, INC. IN
OPPOSITION TO PLAINTIFFS' MOTION FOR TRANSFER**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 2

    A.    Uterine Fibroids Versus Uterine Sarcoma ........................................................ 2

    B.    Traditional Surgery Versus Laparoscopic Surgery With Morcellation .................. 2

    C.    Risks Allegedly Associated With Morcellation .................................................... 4

    D.    New Developments Precipitating This Litigation .................................................. 5

    E.    The Different Power Morcellators At Issue .......................................................... 8

    F.    Litigation Concerning Power Morcellators .......................................................... 10

ARGUMENT ................................................................................................................. 12

I.    AN INDUSTRY-WIDE MDL WILL NOT SERVE THE CONVENIENCE OF THE PARTIES OR THE INTERESTS OF JUSTICE ............................................. 12

II.    AN ETHICON-ONLY MDL ALSO IS INAPPROPRIATE ..................................... 14

    A.    Discovery Will Be Intensely Plaintiff-Specific .................................................. 15

    B.    The Number Of Ethicon Actions Is Small, And Will Remain Small .................... 17

    C.    Some of the Long-Pending Cases Are Significantly Advanced in Discovery ....... 19

III.    IN THE EVENT OF CENTRALIZATION, THE DISTRICT OF KANSAS AND THE SOUTHERN DISTRICT OF ILLINOIS ARE INAPPROPRIATE ................................ 19

CONCLUSION .............................................................................................................. 20

8027093

# TABLE OF AUTHORITIES

**Cases**

*In re Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig.*,
709 F. Supp. 2d 1375 (J.P.M.L. 2010)............................................................13, 15

*In re Androgel Prods. Liab. Litig.*,
24 F. Supp. 3d 1378, 1379 (J.P.M.L. 2014)....................................................12, 14

*In re Asbestos and Asbestos Insulation Material Prods. Liab. Litig.*,
431 F. Supp. 906, 909-10 (J.P.M.L. 1977) ............................................................15

*Bextra & Celebrex Prods. Liab. Litig.*,
391 F. Supp. 2d 1377 (J.P.M.L. 2005)....................................................................14

*In re Blair Corp. Chenille Robe Prods. Liab. Litig.*,
703 F. Supp. 2d 1379 (J.P.M.L. 2010).....................................................................15

*In re Boehringer Ingelheim Pharms., Inc.*,
763 F. Supp. 2d 1377 (J.P.M.L. 2011)....................................................................17

*In re Diet Drugs Prods. Liab. Litig.*,
990 F. Supp. 834 (J.P.M.L. 1997)...........................................................................14

*In re Discover Card Payment Protection Plan Mktg. & Sales Practices Litig.*,
764 F. Supp. 2d 1341 (J.P.M.L. 2011)....................................................................14

*In re G.D. Searle & Co. "Copper 7" IUD Prods. Liab. Litig.*,
483 F. Supp. 1343 (J.P.M.L. 1980).........................................................................12

*In re Honey Prod. Mktg. & Sales Practices Litig.*,
883 F. Supp. 2d 1333 (J.P.M.L. 2012)....................................................................13

*JP Morgan Chase & Co. Fair Labor Standards Act (FLSA) Litig.*,
729 F. Supp. 2d 1354 (J.P.M.L. 2010)....................................................................19

*Incretin Mimetics Prods. Liab. Litig.*,
968 F. Supp. 2d 1345 (J.P.M.L. 2013)....................................................................14

*In re Narconon Drug Rehab. Mktg., Sales Practices, & Prod. Liab. Litig.*,
2015 U.S. Dist. LEXIS 14292 (J.P.M.L. Feb. 5, 2015)....................................14, 17

*In re Ne. Contaminated Beef Prods. Liab. Litig.*,
856 F. Supp. 2d 1354 (J.P.M.L. 2012)....................................................................17

*In re Nutek Baby Wipes Prods. Liab. Litig.*,
2015 U.S. Dist. LEXIS 44048 (J.P.M.L. Apr. 2, 2015)...........................................12

*In re OxyElite Pro & Jack3d Prods. Liab. Litig.*,
   11 F. Supp. 3d 1340, 1341 (J.P.M.L. 2014)...........................................................13

*In re Power Balance, LLC, Mktg. & Sales Practices Litig.*,
   777 F. Supp. 2d 1345 (J.P.M.L. 2011)...................................................................18

*In re Watson Fentanyl Patch Prods. Liab. Litig.*,
   883 F. Supp. 2d 1350 (J.P.M.L. 2012)........................................................1, 12, 13

*In re Wireless Lifestyle Inc.*,
   842 F. Supp. 2d 1382 (J.P.M.L. 2012)...................................................................15

*In re Zimmer, Inc. Centralign Hip Prosthesis Prods. Liab. Litig. (No. II)*,
   366 F. Supp. 2d 1384 (J.P.M.L. 2005)...................................................................17

**Other Authorities**

AAGL, *Member Update #5: AAGL Reponse to FDA Guidance on Use of Power*
   *Morcellation during Tissue Extraction*,
   http://www.aagl.org/aaglnews/member-update-5-aagl-response-to-fda-
   guidance-on-use-of-power-morcellation-during-tissue-extraction-for-uterine-
   fibroids/..................................................................................................................7

AAGL, *Morcellation During Uterine Tissue Extraction*,
   http://www.aagl.org/wp-content/uploads/2014/05/Tissue_Extraction_TFR.pdf.................2, 4

AAGL Statement to the FDA on Power Morcellation (July 11, 2014),
   http://www.aagl.org/aaglnews/aagl-statement-to-the-fda-on-power-
   morcellation/....................................................................................................4, 8, 16

FDA, *Executive Summary: Laparoscopic Power Morcellation* (July 2014) at 5-6,
   http://www.fda.gov/downloads/AdvisoryCommittees/ .................................... passim

FDA News Release (Nov. 24, 2014),
   http://www.fda.gov/NewsEvents/Newsroom/Press
   Announcements/ucm424435.htm .............................................................................6

FDA Safety Communication (April 17, 2014),
   http://www.fda.gov/MedicalDevices/Safety/AlertsandNotices/
   ucm393576.htm; ......................................................................................................6

Hurst et al., *Laparoscopic myomectomy for symptomatic uterine myomas*, Fertil
   Steril. 2005 Jan;83(1):1-23 ....................................................................................3

John Kamp & Jennifer Levitz, *Johnson & Johnson Pulls Hysterectomy Device From Hospitals*, Wall Street Journal (July 30, 2014) http://www.wsj.com/articles/johnson-johnson-to-call-for-voluntary-return-of-morcellators-1406754350. ................................................................................5, 6, 7

Jon Kamp, *Women's Cancer Risk Raises Doubts About FDA Oversight*, Wall Street Journal (July 8, 2014) http://www.wsj.com/articles/womens-cancer-risk-raises-doubts-about-fda-oversight-1404842368. ................................................................................6

Linda Johnson, *FDA strengthens warning on device linked to cancer,* AP, Nov. 24, 2014, http://finance.yahoo.com/news/fda-strengthens-warning-device-linked-163440402.html ................................................................................6

Matthiesen, Wickert & Lehrer, S.C., *Statutes of Limitations for All 50 States*, at http://www.mwl-law.com/wp-content/uploads/2013/03/statute-of-limitations-for-all-50-states.pdf ................................................................................16

Mayo Clinic Staff, *Abdominal Hysterectomy: What You Can Expect,* http://www.mayoclinic.org/tests-procedures/abdominal-hysterectomy/basics/what-you-can-expect/prc-20020767 ................................................................3

MDL Statistics Report—Distribution of Pending MDL Dockets by District, http://www. jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-October-15-2014.pdf ................................................................................20

Siedhoff et al., *Laparoscopic hysterectomy with morcellation vs. abdominal hysterectomy for presumed fibroid tumors in premenopausal women: a decision analysis,* Am J Obstet Gynecol. 2015 May; 212(5):591.e1-8 ....................................3

Sinha, et al., *Parasitic myoma after morcellation,* J Gynecol Endosc Surg. 2009 Jul-Dec; 1(2): 113–115 ................................................................................5

Stacy Simon, *FDA Warns of Cancer Risk in a Type of Uterine Fibroid Surgery*, Am. Cancer Soc'y (Apr. 22, 2014), http://www.cancer.org/cancer/news/fda-warns-of-cancer-risk-in-a-type-of-uterine-fibroid-surgery ................................................4

Statement of the Society of Gynecologic Oncology (July 10-11, 2014), https://www.sgo.org/wp-content/uploads/2014/04/SGO-Testimony-to-FDA-on-Power-Morcellation-FINAL.pdf ................................................................................3, 7

United States Courts, *National Judicial Caseload Profile*, http://www.uscourts.gov/file/14254/download?token=gJzW0jub ..........................................20

<u>**PRELIMINARY STATEMENT**</u>

Defendants Johnson & Johnson; Johnson & Johnson Services; Ethicon, Inc.; and Ethicon Endo-Surgery, Inc. (collectively, "Ethicon") hereby oppose the motion to consolidate pretrial proceedings in federal product-liability cases involving power morcellators. Consolidation—on an industry-wide basis, or on a per-manufacturer basis—would neither serve the convenience of the parties and witnesses, nor promote the just and efficient litigation of the actions.

This Panel is "typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold [allegedly] similar products," *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012), and there is no reason to depart from that practice here. An industry-wide MDL may sweep in at least nine unrelated manufacturers. The morcellators these manufacturers have sold differ in crucial ways, including the mechanism by which they work and the warnings provided. There is no industry-wide conspiracy alleged. The manufacturers are direct competitors in the medical-device industry. And the number of cases (20 at this writing) is far smaller than necessary to justify such an unwieldy undertaking.

An Ethicon-only MDL—which Plaintiffs have not requested—makes no more sense. Plaintiff-specific discovery is a major part of every product-liability case, but these cases, which allege that a doctor's use of a power morcellator during surgery worsened the prognosis of a patient's *already existing* cancer, are individualized to an entirely different degree. Moreover, contrary to Plaintiffs' speculation, the number of Ethicon morcellator cases is likely to stay very low. Ethicon voluntarily withdrew its power morcellators from the market over a year ago, so the number of possible injuries is fixed. The relevant statistics suggest that the number of potential unfiled cases is small and manageable. And, due to statute-of-limitations considerations, most of the unfiled cases that *might* exist can never be brought.

1

Under these circumstances, centralization would harm more than it would help, and Plaintiffs' motion should be denied outright. In any event, the District of Kansas (suggested by the movants) and the Southern District of Illinois (suggested by a responding plaintiff) lack any connection to this litigation and are inappropriate transferee districts.

## FACTUAL BACKGROUND

### A. Uterine Fibroids Versus Uterine Sarcoma

The Plaintiffs here all allegedly underwent surgery to remove uterine fibroids. Fibroids (also known as uterine leiomyomas or myomas) are *benign* muscle tumors that occur on or around the uterus, and 20-80 percent of women have them by the time they reach the age of 50. They are usually asymptomatic, and treatment is typically not needed. However, they may cause symptoms such as irregular bleeding, abdominal pain, or increased/decreased urinary frequency.[1]

Some—but not all—Plaintiffs allege that they actually had uterine sarcomas. Sarcomas are a form of *malignant* tumor. They represent less than 5% of all uterine cancers. They are relatively aggressive and have relatively poor prognoses. One form of uterine sarcoma alleged by several Plaintiffs is leiomyosarcoma (LMS). LMS is an especially rare and deadly form of uterine sarcoma, occurring in approximately 1–1.5 in 100,000 U.S. women.[2] "Overall survival for women diagnosed with LMS is universally poor, with only 40% alive at 5 years."[3]

### B. Traditional Surgery Versus Laparoscopic Surgery With Morcellation

If a woman's physician determines that fibroids should be surgically removed, the first decision is whether to remove the entire uterus (*i.e.*, hysterectomy), or whether to remove only

---

[1] FDA, *Executive Summary: Laparoscopic Power Morcellation* (July 2014) at 5-6, http://www.fda.gov/downloads/AdvisoryCommittees/CommitteesMeetingMaterials/MedicalDevices/MedicalDevicesAdvisoryCommittee/ObstetricsandGynecologyDevices/UCM404148.pdf.

[2] *Id.* at 6-7.

[3] AAGL, *Morcellation During Uterine Tissue Extraction* at 4, http://www.aagl.org/wp-content/uploads/2014/05/Tissue_Extraction_TFR.pdf.

the fibroids themselves (*i.e.*, myomectomy).  Once that decision is made, the doctor must decide whether to use traditional surgical procedures, or minimally-invasive laparoscopic procedures.

In the traditional or "open" procedure, a large incision is made in the wall of the lower abdomen; the woman's abdominal cavity is opened; and the uterus is exposed.  The uterus or the fibroids are surgically detached and removed, typically in a single piece, through the incision in the abdominal wall.  The incision is then sutured closed.  On average, it takes six weeks to recover from this type of surgery.[4]

In the laparoscopic procedure, by contrast, tiny incisions of about 1 millimeter in width are made in the abdominal wall, and an endoscope (a small, flexible camera) is inserted into the abdominal cavity.  Surgical instruments are then introduced into the cavity using small, hollow tubes that are inserted into the tiny incisions.  The doctor controls the instruments remotely while observing the interior of the patient's body on a screen.  The uterus or the fibroids are then removed using a tool called a ***power morcellator***, which cores the targeted tissue into long strips so that it can be removed through the tiny incisions.

The laparoscopic method has advantages over the "open" method, such as reduced pain, bleeding, and scarring; shorter hospital stays and recovery times; and less exposure to external contaminants, thereby reducing the risk of infection and death.[5]  The Society of Gynecological Oncology recently noted that "[m]ultiple studies … have shown that compared to traditional ['open'] surgery," the laparoscopic method "results in a substantial reduction in morbidity" and a

---

[4] Mayo Clinic Staff, *Abdominal Hysterectomy: What You Can Expect,* http://www.mayoclinic.org/tests-procedures/abdominal-hysterectomy/basics/what-you-can-expect/prc-20020767.

[5] Hurst et al., *Laparoscopic myomectomy for symptomatic uterine myomas*, Fertil Steril. 2005 Jan;83(1):1-23; Siedhoff et al., *Laparoscopic hysterectomy with morcellation vs. abdominal hysterectomy for presumed fibroid tumors in premenopausal women: a decision analysis*. Am J Obstet Gynecol. 2015 May;212(5):591.e1-8.

8027093

"significant improve[ment]" in "quality of life, body image and return to base line function."[6]

## C. Risks Allegedly Associated With Morcellation

Plaintiffs allege that fragments of the morcellated tissue can be dispersed within the abdominal cavity during surgery, and that in rare cases, this may lead to complications.

One alleged risk concerns malignant cancer. There is no way to determine with certainty prior to surgery that what looks like a fibroid is not, in fact, a malignant sarcoma.[7] This is because "sarcomas … may mimic the radiographic appearance of benign [fibroids], and other preoperative diagnostic testing may not always discriminate between benign and malignant conditions."[8] If the physician misdiagnoses a sarcoma as a fibroid and performs morcellation, this allegedly may disperse cancer cells within the abdominal cavity, leading to "upstaging" (*i.e.*, worsening the prognosis) of the existing cancer. Many of the complaints filed in this litigation allege this sort of "upstaging"—although, as noted below, a number of Plaintiffs do not allege the sort of uterine cancer (sarcoma) that is capable of confusion with a benign fibroid, and one complaint (*Sanders*) does not allege uterine cancer *at all*, but rather, *ovarian* cancer.

"The [available] data on the risk of upstaging … after power morcellation are limited."[9] Moreover, uterine sarcoma is aggressive and often fatal "whether morcellation is used or not."[10] Out of four cohort studies that compared the overall survival rate in morcellation and non-morcellation patients, the morcellation group fared worse to a statistically significant degree in only one study. Because outcomes for uterine sarcoma are already poor, "determining the degree

---

[6] Statement of the Society of Gynecologic Oncology (July 10-11, 2014), https://www.sgo.org/wp-content/uploads/2014/04/SGO-Testimony-to-FDA-on-Power-Morcellation-FINAL.pdf.

[7] FDA, *Executive Summary*, *supra* note 1, at 7; Stacy Simon, *FDA Warns of Cancer Risk in a Type of Uterine Fibroid Surgery*, Am. Cancer Soc'y (Apr. 22, 2014), http://www.cancer.org/cancer/news/fda-warns-of-cancer-risk-in-a-type-of-uterine-fibroid-surgery.

[8] AAGL, *Morcellation During Uterine Tissue Extraction*, *supra* note 3, at 3-4.

[9] AAGL Statement to the FDA on Power Morcellation (July 11, 2014), http://www.aagl.org/aaglnews/aagl-statement-to-the-fda-on-power-morcellation/.

[10] *Id.*

8027093

to which power morcellation contributes to worsened outcomes for patients … is difficult."[11]

Plaintiffs claim, without any supporting citation, that "[e]vidence linking [power morcellators] and upstaging of occult cancer … [was] not disclosed to or shared with the public." (Movants' Br. at 4.)  To the contrary, since the introduction of power morcellators, the alleged risk that tissue dissemination might "upstage" preexisting cancer was well known.[12]  It also has long been known that tumors that appear to be fibroids may, in fact, be malignant sarcomas.[13] For that reason, manufacturers (including Ethicon) have long warned against use of morcellators when malignancy is present or suspected, and have advised taking precautionary measures against disseminating malignant tissue.[14]

The second alleged risk does not involve cancer at all.  Rather, it concerns the possibility that all morcellated fibroid tissue may not be removed from the body following surgery, and that fibroid remnants may "parasitize" (*i.e.*, begin taking blood supply from) adjacent organs in the abdominal cavity and grow into new fibroids.[15]  Like ordinary fibroids, these "parasitic" fibroids are benign and ordinarily asymptomatic, but occasionally cause symptoms and require removal. The surgeon can effectively prevent parasitic fibroids by paying careful attention to remove all residual fragments and performing "intraperitoneal lavage," or irrigating the body cavity following surgery.[16]  Parasitic fibroids are alleged in only one case in this litigation (*Whitehead*).

### D.    New Developments Precipitating This Litigation

For many years, the risk that a woman with presumed fibroids actually had sarcoma was

---

[11] FDA, *Executive Summary*, *supra* note 1, at 22-23.

[12]  John Kamp & Jennifer Levitz, *Johnson & Johnson Pulls Hysterectomy Device From Hospitals*, Wall Street Journal (July 30, 2014), http://www.wsj.com/articles/johnson-johnson-to-call-for-voluntary-return-of-morcellators-1406754350.

[13] *Id.*

[14] *Infra* at 10; *see also* Appendix.

[15]  FDA, *Executive Summary*, *supra* note 1, at 17; Sinha, et al., *Parasitic myoma after morcellation*, J Gynecol Endosc Surg. 2009 Jul-Dec; 1(2): 113–115.

[16] *Id.*

8027093

widely believed to be small (1 in 10,000).  In fact, not a single case of uterine cancer allegedly exacerbated by power morcellation had been reported to the FDA as of December 2013.[17]

In late 2013 and early 2014, "the medical field began re-evaluating [this] risk" after a Boston anesthesiologist diagnosed with cancer following fibroid surgery began a public campaign.[18]  In April 2014, the FDA issued a "safety communication" announcing that, in its view, the risk of a malignant sarcoma being mistaken for a benign fibroid was greater than previously believed—potentially as high as 1 in 350.[19]  However, FDA recognized "limitations to [its] analysis," including the "relatively small number" of studies and the "small number of patients" in those studies; the non-randomized nature of those studies; and "potential publication, selection, and referral bias" in those studies.[20]  Following that announcement, Ethicon suspended sales of its power morcellator devices and directed surgeons to stop using them.  Then, in July 2014, Ethicon issued a voluntary worldwide recall of the devices.[21]

In November 2014, FDA recommended that manufacturers of power morcellators include a "boxed warning" in their labeling.[22]  At that time, the FDA also determined that power morcellators' labeling should contain "contraindications" (*i.e.*, directions against use) for fibroid removal in menopausal or post-menopausal women, and in women who are good candidates for other removal methods.  FDA continues to recognize that "laparoscopic power morcellation may be an appropriate therapeutic option" for some categories of women, *e.g.*, "younger women who

---

[17] FDA, *Executive Summary*, *supra* note 1, at 26; Jon Kamp, *Women's Cancer Risk Raises Doubts About FDA Oversight*, Wall Street Journal (July 8, 2014), http://www.wsj.com/articles/womens-cancer-risk-raises-doubts-about-fda-oversight-1404842368.

[18] Kamp & Levitz, *Johnson & Johnson Pulls Hysterectomy Device*, *supra* note 12.

[19] FDA Safety Communication (April 17, 2014), http://www.fda.gov/MedicalDevices/Safety/AlertsandNotices/ucm393576.htm; Simon, *FDA Warns of Cancer Risk*, *supra* note 7.

[20] FDA, *Executive Summary*, *supra* note 1, at 23-24.

[21] Linda Johnson, *FDA strengthens warning on device linked to cancer*, AP, Nov. 24, 2014, http://finance.yahoo.com/news/fda-strengthens-warning-device-linked-163440402.html.

[22] FDA News Release (Nov. 24, 2014), http://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm424435.htm.

6

are interested in maintaining their ability to have children or wish to keep their uterus intact."[23]

To date, no manufacturer of power morcellators other than Ethicon has recalled its devices or directed doctors to stop using them. A number of hospitals have voluntarily stopped using all morcellators. Others continue to "offer[] power morcellation" using non-Ethicon morcellators, "with detailed informed consent" in line with FDA's new guidelines.[24]

Prominent voices in the medical community have disagreed with FDA's actions. In July 2014, the Society of Gynecologic Oncology told the FDA that it "is not supportive of any overt restriction on power morcellation" in light of its proven "clinical benefit for American women."[25] The Society determined that FDA's analysis of the relevant data "is questionable."[26] It also noted that "even when uterine sarcomas are removed intact [*i.e.*, without morcellation], there is still a very poor prognosis with these aggressive malignancies."[27] It concluded:

> The question comes down to this: Is it better to expose about 1,000 women to increased morbidity and potential mortality by doing an [open] abdominal hysterectomy to avoid morcellation of one unsuspected sarcoma? Or: How do we weigh the proven benefit of [laparoscopy with morcellation] … against the potential and very low risk of disseminating a sarcoma through morcellation? … [M]orcellation has benefited hundreds of thousands of women. … It would be a disservice to deny [them] this surgical option.[28]

Similarly, the AAGL (formerly, American Association of Gynecologic Laparoscopists) took issue with the FDA's conclusions, noting that the data "show a lower prevalence rate" for undetected uterine sarcoma than the 1-in-350 rate calculated by the FDA,[29] and preliminarily

---

[23] *Id.*

[24] Kamp & Levitz, *Johnson & Johnson Pulls Hysterectomy Device*, *supra* note 12.

[25] Statement of the Society of Gynecologic Oncology, *supra* note 6.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] AAGL, *Member Update #5: AAGL Reponse to FDA Guidance on Use of Power Morcellation during Tissue Extraction*, http://www.aagl.org/aaglnews/member-update-5-aagl-response-to-fda-guidance-on-use-of-power-morcellation-during-tissue-extraction-for-uterine-fibroids/.

8027093

finding that laparoscopic surgery with morcellation "may be safer and result in fewer deaths compared with the open approach, even when using prevalence estimates that are [as] high" as the FDA's. In other words, even using FDA's prevalence statistics, "the combined mortality from leiomyosarcoma and the potential dissemination through power morcellation would be less than the mortality from open hysterectomy."[30]

## E. The Different Power Morcellators At Issue

The power morcellator was first described in the medical literature in 1993. "[D]evelopment, manufacturing, and use of [power morcellators] expanded through the 1990s and 2000s."[31] As of April 2014, at least nine companies were cleared by FDA to sell power morcellators for gynecological surgery. These companies included Ethicon, headquartered in New Jersey;[32] Blue Endo, headquartered in Kansas; Cook Medical, headquartered in Indiana; Karl Storz, Richard Wolf, and Trokamed, headquartered in Germany; LiNA, headquartered in Denmark; Olympus, headquartered in Japan; Lumenis, headquartered in Israel; and Smith & Nephew, headquartered in the U.K.

Not all power morcellators are created equal. They differ, *inter alia*, in these ways:

***Reusability.*** Ethicon's now-recalled morcellators were all disposable, single-use instruments. Other morcellators were intended to be sterilized and reused on multiple patients.

***Fragmenting mechanism.*** Power morcellators "generally rely on spinning blades (100-1200 rpm) to fragment tissue."[33] "Early" morcellators "used the 'coring principle' to core out cylindrical pieces of tissue for removal with morcellation rates of < 15 g/min [*i.e.*, less than 15

---

[30] *AAGL Statement to the FDA*, *supra* note 9.

[31] FDA, *Executive Summary*, *supra* note 1, at 14.

[32] Ethicon Inc., which designed and marketed the Ethicon devices, is based in Somerville, New Jersey. The other related corporate entities sued by Plaintiffs (Johnson & Johnson, Johnson & Johnson Services, Inc., and Ethicon Endo-Surgery, Inc.) did not design, supply, promote, distribute, or sell the Ethicon power morcellators.

[33] FDA, *Executive Summary*, *supra* note 1, at 14.

8027093

grams of tissue per minute]."[34]  "Second generation devices are based on the 'peeling principle' where the device incorporates an overhanging edge at the distal end allowing the blade to provide more continuous tissue removal.  These devices have morcellation rates of $\geq$ 30 grams/minute."[35]  One company, Olympus, sells morcellators that rely on "radiofrequency energy," rather than mechanical blades, to fragment tissue.

The FDA has raised the possibility that "the mode of morcellation, *i.e.*, [mechanical blades] versus radiofrequency, or other design factors, *e.g.*, speed of rotation," may correspond with increased or decreased "dissemination [of morcellated tissue] into the [abdominal] cavity."[36]  For this reason, some morcellator models may pose considerably less risk of "parasitic" fibroids or "upstaged" cancer than others.

*Specimen Bags*.  Many power morcellators, including those formerly sold by Ethicon, are compatible with laparoscopic specimen bags.  These are nylon or polyurethane bags that are optionally used to surround the target tissue in order to assist in retrieval.  The FDA recognizes that a "specimen bag" is "a potential mitigation strategy to limit/prevent dissemination of tissue."[37]  At least one manufacturer's morcellators (Olympus) currently are incompatible with specimen bags, and the manufacturer warns against their use.

Moreover, like morcellators, not all specimen bags are the same.[38]  FDA has observed that "the thickness of the material, its sewing/seams, the introduction and deployment mechanisms, [and other features of the bag] vary from product to product."[39]  These variations

---

[34] *Id.*

[35] *Id.*

[36] *Id.* at 15.

[37] *Id.* at 24, 27.

[38] *See id.* at 28 (listing brands and manufacturers).

[39] *Id.* at 27.

may impact "the risk of … tissue dissemination during morcellation" to differing extents.[40]

*Warnings.* FDA has observed that, prior to April 2014, morcellators "varie[d] across manufacturers in terms of statements regarding use on malignant tissue and on the use with a specimen bag."[41]  The chart in the Appendix lists some of the leading morcellators cleared by FDA for use in gynecologic surgeries that were available as of FDA's April 2014 announcement, along with the relevant pre-April 2014 language contained in their warning labels.

Ethicon devices, for example, expressly warned that morcellation "may lead to dissemination of malignant tissue" and advised use of a specimen bag when extracting "malignant tissue or tissue suspected of being malignant" or "tissue that the physician considers to be potentially harmful when disseminated in a body cavity."  Other manufacturers' labels warned against use on "malignant tumors" or in "patients who have been diagnosed with a malignant condition," and/or recommended use of tissue extraction bags where malignancy was suspected, but did not expressly warn about potential tissue *dissemination*.  And one manufacturer (Olympus) advised against use where the physician determined it "would be contrary to the best interests of the patient," and advised *against* use of specimen bags.

## F.    Litigation Concerning Power Morcellators

In March 2014—as the FDA was preparing to issue its first announcement, and as the publicity campaign surrounding morcellators continued—the first action in this litigation, *Burkhardt v. Lina Medical U.S.* (E.D. Pa. Mar. 14, 2014), was filed.  That case was resolved in June 2015 and has recently been dismissed.  Ten other federal cases were also filed in 2014.  So far in 2015, 12 federal cases were filed, one of which has recently been dismissed.  The 21 active cases are pending in district courts in South Carolina (4); California (3); Pennsylvania (2), New

---

[40] *Id.*

[41] *Id.*

Jersey (2), New York (2), Colorado (1), Florida (1), Georgia (1), Kansas (1), Louisiana (1), Maryland (1), Tennessee (1), and Wisconsin (1).[42]

The cases placed at issue by this Motion display a wide range of variation. Sixteen are brought against Ethicon and related defendants; five against Karl Storz; and one each against Richard Wolf and Gyrus (a subsidiary of Olympus).[43] Plaintiffs allege negligence, design defect, failure to warn, breach of express and/or implied warranties, fraudulent misrepresentation, and/or loss of consortium. Eight complaints contain state-specific statutory claims (*e.g.*, for violation of state consumer protection acts). The patients in nine cases are deceased, and their estates bring claims for wrongful death.

Most, but not all, of the complaints involve some type of uterine cancer: a number involve LMS; one, myelosarcoma; one, endometrial stromal sarcoma; one, endometrial adenocarcinoma; and one, adenosarcoma with sarcomatous overgrowth. One complaint (*Sanders*) alleges a form of *ovarian* cancer (low grade serious carcinoma), not uterine cancer. Another complaint (*Nielsen*) alleges unspecified "cancer." One complaint (*Whitehead*) alleges "recurrent parasitic fibroids," but *not* cancer. And one complaint (*A. Phillips*) alleges "tumors … of *uncertain* malignant potential." In some complaints, Plaintiffs allege that their doctor performed pre-surgery testing for cancer; in some, not. At least one Plaintiff's surgery (*Johnson*) used a specimen bag; others did not. Most Plaintiffs' surgeries took place in 2011 and 2012, but one (*N. Phillips*) was as recent as 2014, and one (*Whitehead*) was as long ago as 2006.

The Plaintiffs with cancer allege that morcellation affected their preexisting cancer in

---

[42] The Motion does not include *Montalvo-Ariri v. Johnson & Johnson Inc.*, No. 5:14-cv-01421 (C.D. Cal. July 11, 2014), although that case involves an Ethicon power morcellator.

[43] These add up to more than 21 because a handful of lawsuits name multiple manufacturers— likely because the plaintiff was unable to identify which device was used in her surgery. Based on the dismissal of *Burkhardt*, two manufacturers, LiNA and Blue Endo, are no longer defendants in any pending case.

varying ways. Some (*e.g.*, *Ostrander*) allege that their cancer would not have metastasized absent morcellation and would have remained "encapsulated." Others (*e.g.*, *Watkins*) allege that morcellation "amplified the speed [at which] the cancer metastasized and … depreciated the long-term prognosis." Others (*e.g.*, *Galambos*) were told they were cancer-free but suffered a recurrence which they attribute to earlier morcellation.

## ARGUMENT

Section 1407 permits consolidation when (1) the actions "involv[e] one or more common questions of fact," (2) consolidation would serve "the convenience of [the] parties and witnesses," and (3) consolidation would "promote the just and efficient conduct of [the] actions." However, "***centralization under Section 1407 'should be the last solution after considered review of all other options***,'" including voluntary coordination. *In re Nutek Baby Wipes Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 44048, at *3 n.3 (J.P.M.L. Apr. 2, 2015) (emphasis added). The moving party bears the burden of demonstrating that transfer is appropriate. *In re G.D. Searle & Co. "Copper 7" IUD Prods. Liab. Litig.*, 483 F. Supp. 1343, 1345 (J.P.M.L. 1980). Even when common questions of fact exist, the movant must still show that "the inherent disadvantages of Section 1407 transfer" do not "outweigh the benefits." *Id.*

## I. AN INDUSTRY-WIDE MDL WILL NOT SERVE THE CONVENIENCE OF THE PARTIES OR THE INTERESTS OF JUSTICE

Plaintiffs seek to create an unwieldy MDL against potentially nine unrelated manufacturers that have manufactured and sold power morcellators. This goes against the Panel's general practice. *See Fentanyl Patch*, 883 F. Supp. 2d at 1351 ("***[W]e are typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold [allegedly] similar products.***" (emphasis added)); *In re Androgel Prods. Liab. Litig.*, 24 F. Supp. 3d 1378, 1379 (J.P.M.L. 2014) ("***We are typically hesitant to centralize litigation on an industry-wide basis***." (emphasis added)).

There is especially good reason for hesitation here. Plaintiffs "have not alleged any conspiracy, collaboration, or other industry-wide conduct by the defendants that would justify centralizing actions naming different [manufacturers and distributors] as defendants." *In re Honey Prod. Mktg. & Sales Practices Litig.*, 883 F. Supp. 2d 1333, 1333 (J.P.M.L. 2012). And industry-wide centralization would "complicate these matters, as defendants may need to erect complicated confidentiality barriers, since they are business competitors." *Fentanyl Patch*, 883 F. Supp. 2d at 1351.

Moreover, power morcellators are not all alike. As discussed above, they vary with regard to mechanism of action; disposability; compatibility with protective specimen bags; and the warnings their labeling provided with regard to tissue dissemination, cancer risk, and use of a specimen bag. These differences bear on each device's likelihood of potentially disseminating malignant cells in the body cavity; on the likelihood that a different warning may have convinced the treating physician not to use the device (or to use the device with a protective specimen bag); and on other core elements of the plaintiffs' product-liability claims.

Given these facts, lumping all morcellators together is more likely to confuse the issues and prejudice the Defendants than to serve the convenience of the parties and the interest of justice. *Cf. In re OxyElite Pro & Jack3d Prods. Liab. Litig.*, 11 F. Supp. 3d 1340, 1341 (J.P.M.L. 2014)); *In re Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig.*, 709 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010).

Notably, in instances when this Panel placed different products or manufacturers in the same MDL, the facts were very different from those at issue here:

- ***Number of actions.***  The Panel has created multi-product or multi-manufacturer MDLs when the number of cases was much higher than the 21 cases at issue here.  *See In re Diet Drugs Prods. Liab. Litig.*, 990 F. Supp. 834 (J.P.M.L. 1997) (209 actions, including tag-alongs); *Bextra & Celebrex Prods. Liab. Litig.*, 391 F. Supp. 2d 1377 (J.P.M.L. 2005) (more than 131); *Androgel*, 24 F. Supp. 3d 1378 (126); *Incretin Mimetics Prods. Liab. Litig.*, 968 F. Supp. 2d 1345 (J.P.M.L. 2013).

- ***Identical product or single manufacturer.***  The Panel has created multi-manufacturer MDLs when all manufacturers involved sold identical or near-identical products.  *See Androgel*, 24 F. Supp. 3d 1378 (all manufacturers sold testosterone).  And it has sometimes created multi-product MDLs when all products involved were sold by a single manufacturer.  *See Bextra & Celebrex*, 391 F. Supp. 2d 1377 (both products sold by Pfizer).  Here, by contrast, at least nine unrelated manufacturers manufacture over a dozen different power morcellators that differ in key ways.

- ***Defendants' consent.***  The Panel has created multi-product or multi-manufacturer MDLs when there was significant support for centralization on the defense side.  *See Androgel*, 24 F. Supp. 3d 1378; *Incretin*, 968 F. Supp. 2d 1345; *Bextra & Celebrex*, 391 F. Supp. 2d 1377.  Here, to Ethicon's knowledge, no defendant supports centralization.  *Accord In re Discover Card Payment Protection Plan Mktg. & Sales Practices Litig.*, 764 F. Supp. 2d 1341, 1342 (J.P.M.L. 2011).

- ***Class actions.***  The Panel has created multi-manufacturer MDLs when many constituent actions were "brought on behalf of alleged nationwide or statewide classes," finding centralization necessary to avoid "inconsistent … rulings … with respect to class certification."  *Diet Drugs*, 990 F. Supp. 834.  None of the actions in this litigation is a class action.  *See In re Narconon Drug Rehab. Mktg., Sales Practices, & Prod. Liab. Litig.*, 2015 U.S. Dist. LEXIS 14292, at *3 (J.P.M.L. Feb. 5, 2015).

In sum, this is not one of the rare instances where it would be appropriate to sweep all manufacturers and devices into an enormous industry-wide MDL.  Plaintiffs have provided no good reason why the Panel should deviate from its usual rule, and there are many reasons not to.

## II.    AN ETHICON-ONLY MDL ALSO IS INAPPROPRIATE

An Ethicon-only morcellator MDL would no more serve the ends of Section 1407 than an industry-wide one.  Centralization would not create efficiencies, because discovery in these actions will be intensely plaintiff-specific.  Moreover, the number of pending cases is low, the pace of new filings has been slow, and the number of new cases is self-limited.  Finally, discovery in some cases is at a relatively advanced posture.

8027093

## A.    Discovery Will Be Intensely Plaintiff-Specific

This Panel has long declined to centralize when it appeared that plaintiff-specific issues would constitute the bulk of discovery.  *See, e.g.*, *In re Wireless Lifestyle Inc.*, 842 F. Supp. 2d 1382, 1383 (J.P.M.L. 2012).  This has especially been true in product-liability cases.  *See, e.g.*, *Pain Pump*, 709 F. Supp. 2d at 1377; *In re Blair Corp. Chenille Robe Prods. Liab. Litig.*, 703 F. Supp. 2d 1379, 1380 (J.P.M.L. 2010).[44]

The lopsidedness as between common and individual issues is even more pronounced here than in other product-liability cases.  The common issues, such as what warnings Ethicon gave to the medical community and the public, are relatively straightforward.  On the other hand, issues requiring plaintiff-specific discovery will include:

- ***Whether an Ethicon morcellator was used.***   The threshold issue of whether each Plaintiff was exposed to an Ethicon product *at all* is a significant one. Unlike many drug and device cases, where plaintiffs received a prescription and had it filled themselves, or received a device which they used on an ongoing basis, this case involves a device used by a surgeon, on one isolated occasion, likely while the plaintiff was under sedation. Plaintiffs will not know, and will not have records, of what morcellator (if any) was used on them.  Discovery will need to be taken from doctors or hospitals.

- ***What warnings the treating physician received from Ethicon or other sources.*** Plaintiffs' failure-to-warn claims depend on what information each Plaintiff's surgeon had in his or her possession at the relevant time, whether from Ethicon's warnings or through independent channels.  Although the warnings issued by Ethicon may represent common discovery, what each treating physician actually *saw*—especially from non-Ethicon sources—will require individualized discovery from each physician.

- ***Whether the treating physician would have chosen to use morcellation anyway.***  Even if a Plaintiff's physician was not sufficiently warned, there can be no recovery if that physician would have followed the same course of action despite a stronger warning. This will be a major issue in these cases: even now, prominent societies of physicians oppose restrictions on power morcellators, and believe any risk is outweighed by the safety benefits of minimally-invasive laparoscopic surgery over traditional open hysterectomies.  Indeed, many surgeons continue to utilize power morcellators today. This suggests that many of Plaintiffs' physicians would have opted to use a morcellator,

---

[44] Many of the product-liability litigations for which the Panel denied centralization are far larger than this one.  *See, e.g.*, *Pain Pump*, 709 F. Supp. 2d at 1377 (102 actions and "more than 70 additional related actions"); *In re Asbestos and Asbestos Insulation Material Prods. Liab. Litig.*, 431 F. Supp. 906, 909-10 (J.P.M.L. 1977) (103 actions).

even if the warnings currently mandated by the FDA had been provided at the time of Plaintiffs' surgeries. Making this determination will require discovery from the physician(s) involved in each Plaintiff's surgery.

- ***Whether the risk was communicated to the plaintiff prior to surgery.*** The possibility that morcellation may spread or "upstage" undetected cancer has long been known in the medical community. Although some physicians may have made the judgment not to communicate this to their patients prior to 2014, others did communicate the possibility. Individual discovery will be required as to what each surgeon communicated to each Plaintiff about the risks. Similarly, for the plaintiffs who bring express warranty claims, discovery will be required into what (if anything) Ethicon communicated to each Plaintiff about its products and the attendant risks.

- ***Whether the patient's doctor performed a proper pre-operative examination to screen for uterine cancer.*** While not all cancers can reliably be detected prior to morcellation, many can—including most non-sarcoma uterine cancers. That many Plaintiffs in these cases have non-sarcoma cancers (*e.g.*, "low grade serious carcinoma") raises doubts that their doctors performed a proper screening. This will require extensive discovery from each Plaintiff's surgeon(s) about events that may have transpired years ago.

- ***Whether the doctor used proper care during surgery itself.*** Other things equal, the risk of spreading malignant cells may be increased or decreased by actions taken by the physician during surgery, such as using proper morcellation technique; choosing to use a specimen bag; lavage (washing out) of the body cavity following surgery; etc. For this reason, too, each case will require extensive plaintiff-specific discovery.

- ***Whether the patient's cancer would have followed a similar or identical progression even without use of a morcellator***. Whether morcellation of a malignant tumor potentially disseminates cancer cells depends on whose statistics one accepts. Meanwhile, uterine sarcoma is an aggressive form cancer that often progresses and causes death, "whether morcellation is used or not."[45] Thus, "determining the degree to which power morcellation [actually] contributes to worsened outcomes … is difficult."[46] If the question is difficult on a population-wide basis, it will be next to impossible to determine whether *a specific patient* would have survived longer, or experienced less pain and suffering, absent morcellation. If it can be determined at all, it will require hypothetical modeling of how each specific Plaintiff's cancer would have unfolded absent morcellation. Since cancer is so variable, an accurate model (if such a thing is possible) will require discovery of each plaintiff's genetics, family history, course of treatment, and much more.

- ***When the plaintiff discovered, or should have discovered, her injury.*** In all but three states, the statute of limitations for personal injury claims is four years or shorter; in many states, it is three years, and in some states, it is only one or two years. The statute of limitations for wrongful death claims is usually even shorter—between one and three

---

[45] AAGL Statement to the FDA, *supra* note 9.

[46] *Id.*

years.[47]  Here, Plaintiffs' surgeries took place as long ago as 2006.  Thus, many of their claims are facially time-barred.  If Plaintiffs live in states that employ a discovery rule, then the timeliness of their claims will ultimately turn on when the Plaintiff discovered her injury or could have discovered it employing reasonable diligence—another intensely plaintiff-specific issue.  Moreover, accrual and tolling rules vary from state to state, and will necessitate state-specific legal analyses that do not lend themselves to centralization.  *See Narconon*, 2015 U.S. Dist. LEXIS 14292, at *3.

Under these circumstances, "informal cooperation" as to the few and manageable overlapping issues "is both practicable and preferable."  *In re Ne. Contaminated Beef Prods. Liab. Litig.*, 856 F. Supp. 2d 1354, 1354-55 (J.P.M.L. 2012).  Notably, Ethicon is represented by the undersigned counsel in all morcellator cases; the undersigned counsel is already coordinating discovery in all cases and will continue doing so.  Moreover, a small handful of plaintiffs'-side firms have filed over half of the cases.  (The movants' counsel, Weitz & Luxenberg, has filed six cases, and Motley Rice, Medley & Spivy, and Alonso Krangle have each filed two).  *Cf. In re Boehringer Ingelheim Pharms., Inc.*, 763 F. Supp. 2d 1377, 1378-79 (J.P.M.L. 2011).

## B.     The Number Of Ethicon Actions Is Small, And Will Remain Small

As noted above, there are 21 power morcellator cases in the federal courts, and only 16 that name an Ethicon entity as a Defendant.  Since the first lawsuit in March 2014, the rate of filing of new cases has been gradual and stable, with no noticeable acceleration.  Two cases, moreover, have been resolved or dismissed.  Plaintiffs assert that "additional actions are expected to be filed … in the future."  (Movants' Br. at 2, 6.)  However, the mere "allu[sion] to the prospect of additional actions … not now before the Panel" is not a "persuasive reason for transfer."  *In re Zimmer, Inc. Centralign Hip Prosthesis Prods. Liab. Litig. (No. II)*, 366 F. Supp. 2d 1384, 1385 (J.P.M.L. 2005).  Indeed, for reasons ignored by plaintiffs, the number of claims against Ethicon will remain low.

***First***, the number of women who might possibly have been injured in the manner alleged

---

[47] *See* Matthiesen, Wickert & Lehrer, S.C., *Statutes of Limitations for All 50 States*, at http://www.mwl-law.com/wp-content/uploads/2013/03/statute-of-limitations-for-all-50-states.pdf.

here is necessarily small. Plaintiffs estimate that "650,000 women a year" undergo surgical myomectomy or hysterectomy. (Movants' Br. at 3.) But that statistic is irrelevant. The relevant question is (1) how many women underwent the *laparoscopic* variety of those surgeries; (2) how many of *those* women were operated upon using Ethicon's morcellators; (3) how many of *those* women had undetectable uterine sarcomas at the time of surgery; and (4) how many of *those* women had their prognosis measurably worsened as a result. Plaintiffs fail to provide any estimate of *that* number, even though they bear the burden on this motion. Indeed, over the past 18 months, Plaintiffs' lawyers have invested millions of dollars advertising for morcellator cases, and this investment has yielded just 16 lawsuits against Ethicon.

**Second**, Ethicon directed physicians to stop using its products in April 2014, and voluntarily withdrew them from the market in July 2014. Thus, all (or virtually all) surgeries using the challenged Ethicon products—and, *a fortiori*, all (or virtually) all injuries allegedly caused by those products—occurred a year or more in the past. No new injuries have transpired since mid-2014 that might add to the number of cases against Ethicon.

**Third**, as noted above, the statute of limitations for personal injury claims is four years or less in all but three states, and is as short as one or two years in some states. The statutes of limitations for wrongful death are generally even shorter. Thus, most of the claims against Ethicon that might potentially be outstanding are time-barred, and will never be filed.

For these reasons—and contrary to plaintiffs' speculation—the life span of this litigation and the number of claims is inherently bounded, and the substantial costs of centralization are not worthwhile. *See In re Power Balance, LLC, Mktg. & Sales Practices Litig.*, 777 F. Supp. 2d 1345, 1346 (J.P.M.L. 2011).

The only thing that might make the Plaintiffs' prophecy of growth come true is if the Panel grants their motion. Creating an Ethicon morcellator MDL would accomplish little, other

than possibly multiplying an otherwise limited number of complaints. This is particularly true as it relates to alleged injuries other than cancer. The inclusion of non-cancer cases, such as the *Whitehead* lawsuit, in any consolidated proceeding would invite abuse and likely result in the filing of numerous, non-cancer cases collected as a result of a massive advertising campaign.

### C. Some of the Long-Pending Cases Are Significantly Advanced in Discovery

Some of the lawsuits against Ethicon have been pending for more than a year. In some of the earlier-filed cases, discovery already has been exchanged, and some are about to enter scheduled mediations. Those cases stand in stark contrast to the new actions commenced by counsel for the movants on the eve of filing this petition. *See, e.g., Smith* (filed June 15, 2015); *Whitehead* (filed June 12, 2015). This disparity in case progress is another reason to deny consolidation. See *JP Morgan Chase & Co. Fair Labor Standards Act (FLSA) Litig.*, 729 F. Supp. 2d 1354, 1355 (J.P.M.L. 2010).

## III. IN THE EVENT OF CENTRALIZATION, THE DISTRICT OF KANSAS AND THE SOUTHERN DISTRICT OF ILLINOIS ARE INAPPROPRIATE

Movants have requested centralization in the District of Kansas before the Hon. Kathryn H. Vratil. Plaintiff Timothy Schroeder has filed a response requesting centralization in the Southern District of Illinois before the Hon. David R. Herndon. In the event the Panel orders centralization over Ethicon's objections, neither of these fora is appropriate. This litigation has no meaningful connection to Kansas, and none whatsoever to the Southern District of Illinois.

First, only *one* manufacturer of power morcellators (Blue Endo) is based in Kansas, and that manufacturer is no longer named in any active case. (*Burkhardt*, which named Blue Endo as a defendant, was recently resolved.) Thus, no evidence is located in that District that relates to any Defendant in any pending case. Moreover, there is only a single action pending in Kansas (*Shafer*)—which, in any event, is not before Judge Vratil.

Second, it does not appear that any Defendant (and certainly no Ethicon party) is based in

the Southern District of Illinois, and there are no actions pending in the Southern District of Illinois. There is another substantial drawback to the Southern District of Illinois: that district is significantly overtaxed. It has the second-highest caseload per district judge of all districts nationwide: 2,026 per judgeship—more than three times the national average of 629.[48] Judge Herndon, moreover, is already overseeing two product liability MDLs.[49] As of May 15, 2015, Judge Herndon still was presiding over 3,378 cases between those two MDLs—the fifth-highest of any MDL judge in the country.[50] While the District of Kansas and Judge Vratil are less overburdened, Judge Vratil is also presiding over two active MDLs.[51]

## CONCLUSION

For the reasons outlined above, the Panel should deny the motion to centralize.

Dated:       July 10, 2015

Respectfully submitted,

/s/ John D. Winter
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York  10036
Tel:  212-336-2000 / Fax: 212-336-2222
Email: jwinter@pbwt.com

---

[48] *See* United States Courts, *National Judicial Caseload Profile*, http://www.uscourts.gov/file/14254/download?token=gJzW0jub .

[49] *In re Pradaxa Prods. Liab. Litig.* (MDL 2385); *In re Yasmin & Yaz Marketing, Sales Practices, and Prods. Liab. Litig.* (MDL 2100).

[50] *See* MDL Statistics Report—Distribution of Pending MDL Dockets by District, http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-October-15-2014.pdf.

[51] *In re Monsanto Co. Genetically-Engineered Wheat Litig.* (MDL 2473), *In re Motor Fuel Temperature Sales Practices Litig.* (MDL 1840).

8027093

# **APPENDIX**

| Manfuacturer (Headquarters) | Device Name | Relevant Warnings in Labeling Pre-4/2014 (emphases added) |
|---|---|---|
| Ethicon (New Jersey) | Gynecare Morcellex<br><br>Morcellex Sigma | The **use of a tissue extraction bag is recommended** for the morcellation of **malignant** tissue or tissue suspected of being **malignant** and for tissue that the physician considers to be potentially harmful when **disseminated** in a body cavity. As morcellation may affect endometrial pathologic examination, preoperative evaluation of the endometrium should be considered. Should **malignancy** be identified, use of the GYNECARE Morcellex Tissue Morcellator **may lead to dissemination of malignant tissue**. |
| Karl Storz (Germany) | Sawahle Rotocut G1 | Direct use for electromechanical morcellation, resection, or tissue ablation is contraindicated in the case of **malignant** tumors and vascularized tissue.<br><br>Note: A **tissue extraction bag is advised** for the morcellation of **tumors** or tissue suspected of being **malignant** and for tissue that the surgeon may consider to be harmful if **disseminated** in a body cavity. |
| Richard Wolf (Germany) | Morce Power Plus | Contraindicated for treatment of **malignant** tumors, treatment of vascularized tissue, and preparation of tissue.<br><br>The **use of a tissue extraction bag is recommended** for the morcellation of tissue suspected of being **malignant** and for tissue the surgeon may consider to be potentially harmful when **disseminated** in the body cavity. |
| LiNA (Denmark) | LiNA Xcise | The LiNA Xcise should not be used in patients who have been diagnosed with a **malignant** condition. |
| Trokamed GmbH (Germany) | Trokamed Morcellator | Contraindicated for use in treatment of **malignant** tumors or for vascularized tissue. |
| Gyrus, subsidiary of Olympus (Japan) | ACMI PlasmaSord | Contraindicated when, in the best judgment of the physician, bipolar electrosurgical procedures would be contrary to the best interests of the patient.<br><br>**Do not use this device with tissue-removal bags**. |

## PROOF OF SERVICE

I hereby certify that, on July 10, 2015, a copy of the foregoing BRIEF OF

DEFENDANTS JOHNSON & JOHNSON, et al., IN OPPOSITION TO PLAINTIFFS'

MOTION FOR TRANSFER was served by ECF and electronic mail on the following:

Paul J. Pennock
Jerry M Kristal
Ellen Relkin
Michael Edward Pederson
Donald A Soutar
Weitz & Luxenberg. P.C.
700 Broadway
New York, NY 10003
ppennock@weitzlux.com
jkristal@weitzlux.com
erelkin@weitzlux.com
mpederson@weitzlux.com
dsoutar@weitzlux.com
(212) 558-5549 (Telephone)
(212) 344-5461 (Facsimile)
>    **Counsel for Plaintiff: Robin L. Barnett**
>    Western District of Wisconsin, 3:15-cv-00242
>    **Counsel for Plaintiffs: Eva C. Galambos and John T. Galambos**
>    Northern District of Georgia, 1:15-cv-01406
>    **Counsel for Plaintiffs: Arthur T. Johnson, Individually and as Administrator of the Estate of Jonel Rollins Davis-Johnson, Deceased**
>    Eastern District of Pennsylvania (Philadelphia), 2:15-cv-00553
>    **Counsel for Plaintiffs: Jennifer A. Sanders and Randall L. Sanders**
>    Eastern District of Pennsylvania (Philadelphia), 2:14-cv-07253
>    **Counsel for Plaintiffs: Ruthann And Daryl Smith**
>    District of New Jersey (Trenton), 3:15-cv-03988
>    **Counsel for Plaintiffs: Carla and Joe Whitehead**
>    District of New Jersey (Trenton), 3:15-cv-03980

Charles Andrew Childers
Childers, Schlueter & Smith, LLC
Suite 100
1932 North Druid Hills Road
Atlanta, GA 30319
404-419-9500
achilders@cssfirm.com
>    **Counsel for Plaintiffs: Eva C. Galambos and John T. Galambos**
>    Northern District of Georgia, 1:15-cv-01406

8027093

Michael S. Burd
Seth A. Katz
Brian K. Matise
Burg Simpson Eldredge Hersh & Jardine, PC
40 Inverness Dr E
Englewood, CO 80112
skatz@burgsimpson.com
bmatise@burgsimpson.com
> **Counsel for Plaintiffs: Timothy Schroeder, individually and as husband of Cynthia Schroeder, deceased**
> Middle District of Tennessee (Nashville), 3:14-cv-02389

Barbara G. Medley
Medley & Spivy
111 W Commerce
Suite 201
Lewisburg, TN 37091
(931) 359-7555
deannahopkins@bellsouth.net
> **Counsel for Plaintiffs: Timothy Schroeder, individually and as husband of Cynthia Schroeder, deceased**
> Middle District of Tennessee (Nashville), 3:14-cv-02389

Carmen Scott
Motley Rice LLC
28 Bridgeside Blvd
Mt. Pleasant, SC 29464
(843) 216-9160 (Phone)
cscott@motleyrice.com
> **Counsel for Plaintiffs: Romona Yvette Gourdine and Randolph Gourdine, Jr.**
> District of South Carolina (Charleston), 2:14-cv-04839
> **Counsel for Plaintiffs: Michael Watkins, individually and as personal representative for the Estate of Enid Watkins, deceased**
> District of South Carolina (Columbia), 3:15-cv-01585

Kenneth W Pearson
Johnson Becker
33 South 6th Street
Suite 4530
Minneapolis, MN 55402
612-436-1879
kpearson@johnsonbecker.com
> **Counsel for Plaintiffs: Michael Watkins, individually and as personal representative for the Estate of Enid Watkins, deceased**
> District of South Carolina (Columbia), 3:15-cv-01585

Sean P. Tracey
Andrew E. Rubenstein
Rebecca B. King
Tracey & Fox
6243 Interstate 10 Frontage Rd, Suite 1011
San Antonio, TX 78201
stracey@traceylawfirm.com
arubenstein@traceylawfirm.com
rking@traceylawfirm.com
713-495-2333
Fax 866.709.2333
> **Counsel for Plaintiff: Molly Patricia Minihan**
> District of Colorado (Denver), 1:15-cv-00695

Beth Ann Klein
Klein Frank, P.C.
1909 26th Street
#1C
Boulder, CO 80302-5701
303-448-8884
Fax: 303-861-2449
beth@kleinfrank.com
> **Counsel for Plaintiff: Molly Patricia Minihan**
> District of Colorado (Denver), 1:15-cv-00695

Francois M. Bladeau
Southern Med Law
The Southern Institute for Medical and Legal Affairs
2224 First Avenue North
Birmingham, AL 35203
francois@southernmedlaw.com
(205) 326-3336 (Phone)
(205) 380-0145 (Fax)
> **Counsel for Plaintiffs: George Leuzzi, as Administrator of the Estate of Brenda Leuzzi, deceased and George Leuzzi, individually**
> Western District of New York (Rochester), 6:14-cv-06218
> **Counsel for Plaintiffs: John Ostrander, Individually and as the Representative of the Estate of Cynthia Ostrander, deceased**
> District of South Carolina (Greenville), 6:15-cv-00516

Timothy Ryan Langley
Charles Joseph Hodge
Christopher B Hood
Hodge Law Office
PO Box 2765

Spartanburg, SC 29304
864-585-3873
rlangley@hodgelawfirm.com
chodge@hodgelawfirm.com
chood@hgdlawfirm.com
**Counsel for Plaintiffs: John Ostrander, Individually and as the Representative of the Estate of Cynthia Ostrander, deceased**
District of South Carolina (Greenville), 6:15-cv-00516

Robert L. Clarkson, Esq.
Clarkson Riley Rubin LLP
1801 Century Park East, 24th Floor
Los Angeles, California 90067
rclarkson@clarksonriley.com
Telephone: (310) 552-0050
Facsimile: (310) 552-0060
**Counsel for Plaintiffs: Lisa Nielsen and Kurt Nielsen**
Eastern District of California (Sacramento), 2:14-cv-02375

William Victor Campisi, Jr., Esq.
Law Office of William Campisi, Jr.
1932 Bonita Avenue
Berkeley, California 94704
campisi@campisi-law.com
Telephone: (510) 549-3112
Facsimile: (510) 549-9260
**Counsel for Plaintiffs: Sarah Salem-Robinson and Alan A. Robinson**
Northern District of California (San Jose), 5:14-cv-02209

Julie Braman Kane, Esq.
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, Florida 33134-2351
Julie@colson.com
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
**Counsel for Plaintiffs: Evanthia Kotis and A.K., parent and minor daughter**
Southern District of Florida (Ft. Lauderdale), 0:15:cv-60566

Harris L. Pogust, Esq.
Andrew J. Sciolla
Pogust Braslow & Millrood, LLC
Eight Tower Bridge
161 Washington Street, Suite 940
Conshohocken, Pennsylvania 19428
hpogust@pbmattorneys.com

asciolla@pbmattorneys.com
Telephone: (610) 941-4204
Facsimile: (610) 941-4245
**Counsel for Plaintiffs: Evanthia Kotis and A.K., parent and minor daughter**
Southern District of Florida (Ft. Lauderdale), 0:15:cv-60566

David C. DeGreeff, Esq.
Wagstaff & Cartmell, LLP
4740 Grand Avenue, Suite 300
Kansas City, Missouri 64112
ddegreeff@wcllp.com
Telephone: (816) 701-1100
Facsimile: (816) 531-2372
**Counsel for Plaintiffs: Terry L. Shafer, individually and as personal representative
of the Estate of Carol Cecilla Merrill, deceased, and Doris Simpson, individually**
District of Kansas (Kansas City), 2:14-cv-02633

Mark P. Schloegel, Esq.
William Dirk Vandever
The Popham Law Firm, PC
712 Broadway, Suite 100
Kansas City, Missouri 64105
mschloegel@pophamlaw.com
dvandever@pophamlaw.com
Telephone: (816) 221-2288
Facsimile: (816) 221-3999
**Counsel for Plaintiffs: Terry L. Shafer, individually and as personal representative
of the Estate of Carol Cecilla Merrill, deceased, and Doris Simpson, individually**
District of Kansas (Kansas City), 2:14-cv-02633

Ashley D. Dopita, Esq.
Dessin Fournir Companies
308 West Mill Street
Plainville, Kansas 67663
adopita@dessinfournir.com
Telephone: (785) 434-2777
**Counsel for Plaintiffs: Terry L. Shafer, individually and as personal representative
of the Estate of Carol Cecilla Merrill, deceased, and Doris Simpson, individually**
District of Kansas (Kansas City), 2:14-cv-02633

Gregory Thomas Skikos, Esq.
Skikos, Crawford, Skikos & Joseph, LLP
One Sansome Street, Suite 2830
San Francisco, California 94104
gskikos@skikoscrawford.com
Telephone: (415) 546-7300

**Counsel for Plaintiff: Nidra L Phillips**
Eastern District of Louisiana (New Orleans), 2:15-cv-01310

Aaron Z. Ahlquist, Esq.
Maury A. Herman
James C. Klick
Joseph A. Kott
Mikalia Miceli Kott
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
aahlquist@hhkc.com
mherman@hhklawfirm.com
jklick@hhkc.com
jkott@hhklawfirm.com
mkott@hhklawfirm.com
Telephone: (504) 581-4892
**Counsel for Plaintiff: Nidra L Phillips**
Eastern District of Louisiana (New Orleans), 2:15-cv-01310

Andrea S. Hirsch, Esq.
Herman Gerel, LLP
230 Peachtree Street NW, Suite 2260
Atlanta, Georgia 30303
ahirsch@hermangerel.com
Telephone: (404) 880-9500
**Counsel for Plaintiff: Nidra L Phillips**
Eastern District of Louisiana (New Orleans), 2:15-cv-01310

Caragh Fay, Esq.
Annie P Kaplan
Molly Patricia Hoffman
Fay Kaplan Law PA
777 Sixth Street, NW Suite 410
Washington, DC 20001
Caraghfay@aol.com
annie.kaplan@gmail.com
molly.hoffman80@gmail.com

Telephone: (202) 589-1300
**Counsel for Plaintiffs: Bridget Caradori, Individually and as a Personal Representative of Patricia Daley, Deceased**
District of Maryland, 8:14-cv-03198

Andres F. Alonso, Esq
David B. Krangle

Alonso Krangle LLP
445 Broad Hollow Road, Suite 205
Melville, New York 11747
aalonso@alonsokrangle.com
dkrangle@alonsokrangle.com
Telephone: (516) 350-5555
**Counsel for Plaintiff: Linda S. Bobletz**
Northern District of New York, 3:14-cv-01024
**Counsel for Plaintiffs: George Leuzzi, as Administrator of the Estate of Brenda Leuzzi, deceased and George Leuzzi, individually**
Western District of New York (Rochester), 6:14-cv-06218


Elizabeth Middleton Burke, Esq.
Richardson Patrick Westbrook & Brickman
PO Box 1007
Mt Pleasant, South Carolina 29465
bburke@rpwb.com
Telephone: (843) 727-6500
**Counsel for Plaintiffs: Andrea Phillips and Kevin Phillips**
District of South Carolina (Spartanburg), 7:15-cv-02114


Robert W. Goodson
Wilson, Elser, Moskowitz,
Edelman & Dicker, LLP
700 11th Street, NW, Suite 400
Washington, D.C. 20001
robert.goodson@wilsonelser.com
202.626.7660 (Main)
202.628.3606 (Fax)
**Counsel for Defendants: Karl Storz Endoscopy-America, Inc. and Karl Storz GmbH & Co., KG**
District of Maryland, 8:14-cv-03198
District of New York, 3:14-cv-01024
District of South Carolina, 2:14-cv-04839
District of South Carolina, 3:15-cv-01585
Western District of Wisconsin, 3:15-cv-00242


Lisa Marie Robinson
Michael D. Shalhoub
Goldberg, Segalla Law Firm
5786 Widewaters Parkway
Syracuse, NY 13214
315-413-5430
Fax: 315-413-5401
lrobinson@goldbergsegalla.com
mshalhoub@goldbergsegalla.com

8027093

**Counsel for Defendants: Karl Storz Endoscopy-America, Inc.**
District of New York, 3:14-cv-01024

Duke Raleigh Highfield
Joseph J Tierne
Stephen L Brown
Victoria Leigh Anderson
Young Clement Rivers and Tisdale
PO Box 993
Charleston, SC 29402
843-577-4000
Fax: 843-724-6600
dhighfield@ycrlaw.com
jtierney@ycrlaw.com
sbrown@ycrlaw.com
tanderson@ycrlaw.com

**Counsel for Defendants: Karl Storz Endoscopy-America, Inc.**
District of South Carolina (Charleston), 2:14-cv-04839
District of South Carolina (Columbia), 3:15-cv-01585

Jameson B. Carroll
Michael Weiss
Carroll & Weiss
1819 Peachtree Road
Suite 104
Atlanta, GA 30309
Jcarroll@carrollweiss.com
mweiss@carrollweiss.com
(404) 228-5337 (Phone)
(404) 228-5564 (Fax)

**Counsel for Defendant: Gyrus ACMI, LLC and Gyrus ACMI, LP**
Eastern District of California (Sacramento), 2:14-cv-02375

Charles Stephen Painter
Ericksen Arbuthnot
100 Howe Avenue, Suite 110 South
Sacramento, CA 95825
(916) 483-5181 x218
Fax: (916) 483-7558
cpainter@ericksenarbuthnot.com

**Counsel for Defendant: Gyrus ACMI, LLC and Gyrus ACMI, LP**
Eastern District of California (Sacramento), 2:14-cv-02375

Gregory F. Hauser
Wuersch & Gering LLP
100 Wall Street, 10th Floor

New York, NY 10005
gregory.hauser@wg-law.com
(212) 509-4717 (phone)
(212) 509-9559 (fax)

**Counsel for Defendant: Richard Wolf GmbH and Richard Wolf Medical Instruments Corp.**
Northern District of California (San Jose), 5:14-cv-02209

William Faulkner
McManis Faulkner
50 W. San Fernando Street
10th Floor
San Jose, CA 95113
408-279-8700
Fax: 408-279-3244
wfaulkner@mcmanislaw.com

**Counsel for Defendant: Richard Wolf GmbH and Richard Wolf Medical Instruments Corp.**
Northern District of California (San Jose), 5:14-cv-02209

Stephanie Lee Finn
Herrick & Hart, S.C.
116 West Grand Ave.
P.O. Box 167
Eau Claire, WI 54702
715-832-3491
Fax: 715-832-3424
Email: steph@eauclairelaw.com

**Counsel for Defendants: Ethicon, Inc.; Ethicon Endo-Surgery, Inc.; Johnson & Johnson Services; Johnson & Johnson; Vention Medical, Inc. f/k/a The Medtech Group, Inc.; Vention Medical Acquisition Co.; Vention Medical Holdings, Inc.**
Western District of Wisconsin (Madison), 3:15-cv-00242

Kathleen F Sullivan
Paul Farrell Strain
Venable LLP
750 E Pratt St Ste 900
Baltimore, MD 21202
14102447400
Fax: 14102447742
kfs01@venable.com
pfstrain@venable.com

**Counsel for Defendants: Ethicon, Endo Surgery, Inc.**
District of Maryland (Greenbelt), 8:14-cv-03198

David F. Norden

Nancy Karen Deming
Troutman Sanders, LLP-ATL
Bank of America Plaza, Suite 5200
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216
404-885-3608
Fax: 404-885-3900
david.norden@troutmansanders.com
karen.deming@troutmansanders.com
> **Counsel for Defendants: Ethicon, Inc.; Ethicon Endo-Surgery, Inc.; Johnson & Johnson Services; Johnson & Johnson; Vention Medical, Inc. f/k/a The Medtech Group, Inc.; Vention Medical Acquisition Co.; Vention Medical Holdings, Inc.**
> Northern District of Georgia (Atlanta), 1:15-cv-01046

David F. Abernethy
Molly Flynn
Jennifer Lamont
Drinker Biddle & Reath llp
18th & Cherry Streets
One Logan Square
Philadelphia, Pa 19103-6996
215-988-2503
Fax: 215-988-2757
david.abernethy@dbr.com
molly.flynn@dbr.com
jennifer.lamont@dbr.com
> **Counsel for Defendants: Ethicon, Inc.; Ethicon Women's Health & Urology Division Of Ethicon, Inc.; Ethicon Endo-Surgery, Inc.; Johnson & Johnson Services; Johnson & Johnson; Vention Medical, Inc. f/k/a The Medtech Group, Inc.; Vention Medical Acquisition Co.; Vention Medical Holdings, Inc.**
> Eastern District of Pennsylvania (Philadelphia), 2:15-cv-00553
> Eastern District of Pennsylvania (Philadelphia), 2:14-cv-07253
> District of New Jersey (Trenton), 3:15-cv-03988

Patricia Elaine Lowry
Squire Patton Boggs (US) LLP
1900 Phillips Point West
777 S Flagler Drive
Suite 1900
West Palm Beach, FL 33401-6198
561-650-7214
561-655-1509 (fax)
patricia.lowry@squirepb.com

**Counsel for Defendants: Ethicon, Inc.; Ethicon Women's Health & Urology Division Of Ethicon, Inc.; Ethicon Endo-Surgery, Inc.; Johnson & Johnson Services; Johnson & Johnson**
Southern District of Florida, 0:15-cv-60566

John D. Winter
James F. Murdica
Patterson, Belknap, Webb & Tyler
1133 Avenue of the Americas
New York, NY 10036-6710
212-336-2921
Fax: 212-336-2222
jfmurdica@pbwt.com
jwinter@pbwt.com
**Counsel for Defendant: Ethicon Endo-Surgery, Inc.**
Western District of New York (Rochester), 6:14-cv-06218

Tanner J. Walls
Jaudon & Avery, LLP
600 Grant Street
Suite 505
Denver, CO 80203-3526
303-832-1122
Fax: 303-832-1348
tanner.walls@tuckerellis.com
**Counsel for Defendants: Ethicon, Inc.; Ethicon Endo Surgery, Inc.; Ethicon Women's Health & Urology; FemRx, Inc.; Johnson & Johnson Services, Inc.; and Johnson & Johnson**
District of Colorado (Denver), 1:15-cv-00695

Samuel W Outten
Amanda S Kitts
Lindsay Livingston Builder
Nelson Mullins Riley and Scarborough (G)
PO Box 10084
Greenville, SC 29603-0084
864-250-2299
Fax: 864-232-2925
sam.outten@nelsonmullins.com
amanda.kitts@nelsonmullins.com
lindsay.builder@nelsonmullins.com
**Counsel for Defendants: Ethicon, Inc.**
District of South Carolina (Greenville), 6:15-cv-00516

James B. Irwin , V
Kelly E. Brilleaux

Irwin Fritchie Urquhart & Moore, LLC (New Orleans)
400 Poydras St.
Suite 2700
New Orleans, LA 70130
504-310-2100
jirwin@irwinllc.com
kbrilleaux@irwinllc.com
> **Counsel for Defendants: Ethicon, Inc.; Johnson & Johnson Services, Inc.; and Johnson & Johnson**
> Eastern District of Louisiana (New Orleans), 2:15-cv-01310

Anita K. Modak-Truran
G. Brian Jackson
Butler Snow LLP (Nashville)
The Pinnacle at Symphony Place
150 Third Avenue South
Suite 1600
Nashville, TN 37201
(615) 651-6751
Fax: (615) 651-6701
anita.modak-truran@butlersnow.com
brian.jackson@butlersnow.com
> **Counsel for Defendants: Ethicon Endo Surgery, Inc.**
> Middle District of Tennessee (Nashville), 3:14-cv-02389

Micah L. Hobbs
Scott W. Sayler
Shook, Hardy & Bacon LLP - KC/Grand
2555 Grand Boulevard
Kansas City, MO 64108-2613
816-474-6550 ext 18006
Fax: 816-421-5547
Mhobbs@shb.com
ssayler@shb.com
> **Counsel for Defendants: Ethicon, Inc.; Ethicon Endo Surgery, Inc.; Ethicon Women's Health & Urology**
> District of Kansas (Kansas City), 2:14-cv-02633

/s/ John D. Winter
John D. Winter